**Michelle ZIMMERMAN,
Plaintiff–Appellant,**

v.

**COOK COUNTY SHERIFF'S DEPARTMENT, Michael F. Sheahan, and Sheriff of Cook County, Defendants–Appellees.**

No. 96–1298.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 1996.

Decided Sept. 24, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 6, 1996.

Anthony S. DiVincenzo, Campbell & DiVincenzo (argued), Chicago, IL, for Plaintiff–Appellant.

John J. Murphy (argued), Rohit Sahgal, Office of the State's Attorney of Cook County, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

█ Michelle Zimmerman, the plaintiff in this Title VII sexual harassment case, was employed as a correctional officer by the Cook County Sheriff's Department. Early in August of 1992 a fellow officer, Salvatore Terranova, began to harass her sexually. His campaign of harassment, which included repeated references to his "big dick," culminated on August 14 when he placed a zucchini between his legs and thrust it against the plaintiff's buttocks. Three days later, the plaintiff submitted a memorandum to her supervisor in which she requested a change in work assignment because of "a severe personality conflict at my present job." Without investigating the plaintiff's request, her supervisor turned it down the next day. As it happens, the plaintiff had previously complained about a personality conflict with a female officer named Lichtenstein, and her supervisor assumed that her memorandum of August 17—which did not state with whom she was having a personality conflict—concerned a recurrence of the conflict with Lichtenstein. The following day, August 19, the plaintiff was temporarily assigned to another part of the building, and at that time her supervisor told her that she and Lichtenstein would have to be separated because of their personality conflict. The plaintiff replied that her problem was not with Lichtenstein, but she did not reveal the nature of the problem or whom it involved. The next day she was reassigned to the same part of the building as the harasser, Terranova, and he immediately resumed his harassment of her. The campaign escalated. On August 24, he grabbed one of her breasts, grabbed and rubbed her buttocks, and grabbed her by her wrists and yanked her arms down, injuring one of her arms. On August 25 and 26, she submitted detailed memoranda concerning the incidents of the twenty-fourth to her superiors. They conducted an investigation that exonerated Terranova, but meanwhile they made sure he was separated from the plaintiff at work. Shortly afterward she went on disability leave, and she did not return to her job for a year. She and Terranova had no further contact after August 24. She filed criminal charges against him arising out of the incidents of that day; and despite his having been exonerated by the internal investigation, he was convicted of sexual assault.

█ The district judge granted summary judgment for the defendants on the ground that until August 25, which was too late, they had had no reason to think the plaintiff was being sexually harassed and therefore no duty to protect her from Terranova. The liability of an employer for sexual harassment by one nonsupervisory employee of another is not strict. The plaintiff must prove that the employer was negligent in having failed to discover and prevent it. E.g., *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir.1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446–47 (7th Cir.1994); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1422 (7th Cir.1986); *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1346 (10th Cir.1990). The sheer pervasiveness of the harassment might support an inference that the employer must have

known of it, e.g., *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), as might a complaint from someone other than the victim. E.g., *McDonnell v. Cisneros*, 84 F.3d 256 (7th Cir.1996); *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 783–84 (10th Cir.1995). But when, as in this case, the only possible source of notice to the employer—in the absence of an Orwellian program of continuous surveillance, not yet required by the law, see generally J. Hoult Verkerke, "Notice Liability in Employment Discrimination Law," 81 *Va. L.Rev.* 273, 345–46, 365–67 (1995)—is the employee who is being harassed, she cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed. See, e.g., *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir.1992); *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776–77 (6th Cir.1996); cf. *Baskerville v. Culligan Int'l Co.*, *supra*, 50 F.3d at 432. Far from complaining of harassment on August 17, the plaintiff gave an explanation for her request for a different assignment that was calculated (whether intended to do so or not) to throw her supervisor off the scent. She says that she was afraid of Terranova's political clout. But she does not attempt to lay that fear at the defendants' door or to argue that the defendants, knowing of that clout, should have suspected that he would engage in sexual harassment that would be unreported to them. She points out that two days after submitting her initial complaint she disabused her supervisor of his impression that the "personality conflict" was with Lichtenstein. But the implication was that it was a personality conflict with someone else, an unnamed someone else, and a personality conflict is not a form of sexual harassment.

■ At bottom the plaintiff is contending for a rule that *any* request for a change of assignment based on a conflict with a coworker must be investigated as a charge of sexual harassment. Such a rule would impose a form of strict liability, contrary to the law. In a case such as this in which pervasive harassment is not charged, the employ-er's duty to investigate and if appropriate take remedial measures is not activated until the employee complains of sexual harassment or information about the harassment comes to the employer's attention from some other quarter.

■ Independent of the lack of notice of sexual harassment to the employer, this suit must fail because of lack of evidence of a causal relation between the alleged negligence of the employer and the harm of which the employee complained. Supposing the plaintiff's superiors had begun an investigation on August 17 as soon as they received the plaintiff's first memo, there is no reason to think it would have been completed and remedial action taken by August 24. (We note that when the EEOC gives an employer notice of a charge of discrimination, the employer has ten days in which to investigate the charge. 42 U.S.C. § 2000e–5(b).) It cannot be assumed that the plaintiff would have cooperated in the investigation, since she claims (we assume truthfully, for purposes of our consideration of her appeal) to have been intimidated and if so would have been reluctant to accuse Terranova. So even if the defendant culpably delayed in instituting the investigation, the injury of which the plaintiff complains would in all likelihood have occurred unless she had urgently requested an immediate separation between herself and Terranova, which she does not argue she would have done. Unless a defendant's wrong is a cause of the plaintiff's injury, there is no liability. E.g., *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1534 (7th Cir.1992); *Niehus v. Liberio*, 973 F.2d 526, 531–32 (7th Cir.1992); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 684 (7th Cir. 1990). For the application of this principle to Title VII, see, e.g., *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 658 (7th Cir.1991) (en banc).

AFFIRMED.